This is 18-1358 Colas Solutions v. Blacklidge Emulsions. Please see the complete disclaimer at https://sites.google.com Good morning. Good morning, Your Honors. May it please the Court, to understand how the Board erred in finding Blacklidge's patents not obvious, one must understand what the inventions of the patents really is or really are. A careful reading of the patents, and they're essentially identical, demonstrates that the invention was defying conventional wisdom by using a hard pen asphalt composition to obtain a trackless tack coat with good bonding properties. But that is exactly what the Bardisi prior art reference discloses. Well, the claims disclose a penetration value and softening points, and Bardisi does not disclose any softening points, is that correct? Not expressly. Okay, so you've got an inherency argument. No, we're not arguing inherency anymore, and that was because Dr. King, the expert for Colas, made a math error. Once he was apprised of that error, he said, that doesn't change the conclusion of obviousness, and obviousness was always the position. So you agree that based on the record as it stands now, or as it stood after they came in with this, that there's no viable inherency argument here? That's correct, Your Honor. Okay, so that introduces firstly a waiver issue, and then a merits issue. I'm sorry? Firstly, that introduces a waiver issue, and then a merits issue, because we have all sorts of cases, but in this case, you came up with the theory in your petition, and that theory was inherency. They refuted that theory, and now you come up after that with a new and different theory for this case. Isn't it too late? No, it's really not a different theory. The position that Colas took from the get-go was that the claimed invention was obvious under Section 103 in view of the same combination of five references, that there would be an expectation. But I thought you just told me a few minutes ago that your theory was inherency, and that based on, and you pointed out, based on the evidence that the Patenone have brought forward, that inherency argument is no longer viable, and you agree with that. That was your theory. No, no. Yes, it was an obviousness case then, and it's an obviousness case now, but your theory was inherency, was it not? That was a theory. It wasn't the only theory. Well, it was the only theory set forth in the petition. Excuse me? It was the only theory set forth in the petition. Is it your view that the minute you cite to 103 that you can rely on any basis for obviousness, regardless of what it is? Your Honor, there was an emphasis on inherency in the petition, but it was not the only argument that was made. It was a 103 argument. There was language. Okay, but you're making an argument now about overlapping ranges or something like that, right? Was that argument ever made in the petition? The overlapping ranges argument was not expressly made in the petition, but obviousness of the softening point ranges was argued. Well, that's pretty global, right? Obviousness was your theory, so as Judge Bomeli pointed out, you can come up with different aspects of obviousness, like an inherency argument and then something other than an inherency argument. You think that's okay? There's really no material difference between the obviousness argument for the softening point ranges and the inherency argument. In both cases, you're arguing that because all or most, and the Board said there would just be a small fraction because of the math error, that would fall outside the claimed ranges for Bardisi's asphalt. In both cases, you're saying all or most of the softening points for the Bardisi asphalts would fall within the claimed range. Right, but inherency, especially in the obviousness context, requires the conclusion that it necessarily would always flow, right? So you concede that your inherency argument on obviousness doesn't work, right? Yes. Okay, and you also concede that Bardisi doesn't disclose the softening point ranges at all. Not expressly. Not expressly. Not expressly. You can't get there through an inherency, so you're now saying that we can take a series of logical leaps that, and you're going to argue that a procedure would have taken them to get to this end result, right? So where is that argument, which is a much more complex argument and requires, I would think, extra testimony to support it, where is that argument made in the petition? In the petition, the places where obviousness of the softening points were argued in the petition are specified in the blue brief. And I can give you a host of appendix sites and what they say. But do any of them have expert testimony that says a skilled artisan would understand that Bardisi shows these softening point ranges instead of testimony that it automatically or inherently includes these softening point ranges? To me, that seems to be a critical difference here in that you didn't supply that argument and you didn't supply the expert testimony. You are relying on inherency. And when that was proven wrong, yeah, you probably have a pretty good argument on the other point, but if the board didn't institute on that ground, how could we find it incorrect for them to find waiver? Well, the inherency argument was actually a higher standard that had to be argued to support the... Right. I mean, you made yourself a hard case here by not arguing the lower standard of what a skilled artisan would read Bardisi. But, I mean, in retrospect, how do we unravel your choice on that? Let me give you... It may be that it is obvious, but... Let me give you an analogy. If you have a civil case where preponderance of the evidence is a standard and you're so sure of your facts and liability, you argue, well, the defendant under a reasonable doubt standard would be liable. And it turns out the evidence shows it's just a preponderance of the evidence. Well, you've set too high a standard... and you agree that the burden is X and you want to hold yourself to that burden. If you fail it, you fail it, even if you might have had a logical argument for a lower burden. Your Honor, it's not materially different. The two arguments... I don't necessarily disagree with you. Well, how could it not be materially differently, as you would acknowledge, under one you lose and under one you win, at least in your view, not necessarily the board you read. It's not materially different in terms of the obviousness of the softening point ranges that are claimed. Let's go to that material difference, all right? Under inherency, you don't have to worry about what a procedo would think or not think. It's just there, right? No, actually, that's not necessary. You've got like three or four logical steps. Daisy doesn't teach softening points. You then say there's some mathematical formula that someone could use to determine the softening ranges for the asphalt and that from there you could extrapolate, despite the problem with emulsifiers and everything else, to the TAC code. I mean, that's a lot of steps, none of which you recite in your petition. Your Honor, the inherency argument is really, or the obviousness is an expansion on the inherency argument. It's very much like this Court's decision that we cited in our citation of supplemental authority, Erickson v. Intellectual Ventures, where. But Erickson said this argument was in the petition. We made a specific finding that was in the petition and that the Board just chose not to address it. That's very different than saying that, well, whatever you want to believe it was in the petition, we're going to agree. It was literally worded in the petition. Well, as I said, in the petition we did raise also obviousness. The emphasis was on inherency, but you also raised obviousness. We talked about what one ordinary skill in the art would predict, what they would expect, reasonably expect. There's lots of language that supports obviousness. Even if it were not in the petition, at the time that Dr. King was deposed, before the response was filed by Blackledge, and he learned during his deposition that he had made a math error, he said, that doesn't change my conclusion on obviousness. So they knew when they filed their response that obviousness was at issue. They extensively, this is Blackledge, extensively in its response argued about the obviousness of the softening points. Of course, they said it was not obvious, but they extensively argued obviousness. At that point, if it was not in the petition, and I maintain it is, then they waived their position that we can't raise it, because at that point we have a right to rebut. We have a right to rebut the obviousness arguments that they made in their response. And they didn't, after we did that, they didn't move to strike our reply. They didn't move to file a surreply. I don't understand how the fact that your friend on the other side was diligent in addressing all potential arguments that you raised at a later stage prevents the board from saying, no, these are too late. It may be that if the board had said, well, this was good enough, close enough, they're not having any due process violation here because they knew about this argument and went on to decide it, we wouldn't find it error by the board. But why is it error by the board to not address an issue that you didn't raise in your petition? It's error because it was fully developed by the parties. It doesn't matter. The board has the right to enforce its own rules, and we have said that more than once. And it has a rule that you can't raise a new issue in your reply that you didn't put in the petition. And the reason they do that is that when they make a decision to institute, they want to make sure that it is based on all the best arguments that can be presented and that then the whole matter moves forward from there. It's not like a district court where you've got the luxury of amendments and extra time and more discovery. The board has its rules for a reason, and we have said we defer to their application of those rules, barring extreme prejudice or clear errors. Well, the prejudice here, if this court affirms, is all Colas's prejudice. There's no prejudice to Blackledge because the argument was fully developed. They raised it themselves in their response. So it was fully developed. But again, if you raise argument A and the other side says, well, we're going to address argument A because it's clearly wrong, we think that they may come back and argue argument B, which they've waived, but we're still going to, out of the interest of our clients and diligence, address that, that doesn't mean that the board can't say we're only going to rely on A because that's the raise. I mean, they're not conceding anything when they do the extra work to rebut an argument that isn't in the case just out of caution, are they? Well, the board's job is to decide cases. The board's job is to decide the case that is presented to them. And I know you disagree about whether this was presented or not, but just assume that we don't think this other obvious theory was presented in the petition. If that's their job, to decide the issue presented to them, and they say, we're deciding this, you're wrong, do they have an obligation to search beyond the record and find other reasons to invalidate the patents? I think we made it pretty clear that A, they're not obligated to, and in some instances, they're not entitled to. Well, they don't have to search the record. The parties, both sides, presented their positions of obviousness. It was fully developed. And I think you'll agree that the board could have entertained the obviousness argument that was being made. And if they could have, then they should have. There's prejudice to COLAS here because of the estoppel provision that they might not be able to raise this in district court. But there's no prejudice to a party that argued it, fully developed it, was not denied any opportunity. I mean, there's a due process problem, I think. And to say that their procedural rule was violated, it wasn't really because Blackledge itself raised the obviousness argument. And everything was there for them to decide. There was no need for them to refuse, except that they easily got rid of the case from their docket by saying, well, we're not even going to consider it. But they did consider one aspect of obviousness, and that is the overlapping ranges. Now, they considered it. They decided that on the merits. We have the right to appeal that. And they found that it wasn't properly raised. And they found in the alternative that even if it had been properly raised, they dealt with it on the merits. With respect to the In re Pederson argument, they never said it wasn't raised, and therefore we're not deciding it, but in the alternative. They didn't say that. They simply addressed it on the merits. I think they even used the word on the merits. And that was an erroneous decision. Both of their merits analyses were in the alternative, right? No. The In re Pederson, if you look carefully at their opinion, it's after they said we're not going to address your general obviousness argument. And they said as to your In re Pederson argument, we think you lose because there's no disclosure of ranges in Bardisi. And that was erroneous because anyone skilled in the art reading Bardisi would realize that it discloses ranges. In fact, the patents themselves disclose that if you have a hard pen asphalt with a pen value of 40 or less, you're going to have a softening point of at least 140 degrees Fahrenheit. And here Bardisi discloses 10 to 20. At 10 to 20, it's almost a sure thing that you're going to have way over 140 degrees Fahrenheit as the softening point. So the board just ignored the level of skill in the art, the knowledge that a skilled artisan would have. And it's a very high level of skill in the art, which Blackledge never even addressed. OK, we're over your rebuttal time. So let me hear from the other side. May it please the Court. My name is John Triggs and along with Seth Ogden in my office, we represent Blackledge Emulsions. Can you address that last point first? Did the board find waiver as it relates to the Pederson argument? I think so, Your Honor. Your Honor, if we go to page 26 of the decision, to the extent Petitioner's arguments in the – Hold on. Give us a chance to – Oh, sorry, Your Honor. Excuse me. I'll slow down. OK. To the extent Petitioner's arguments in the reply and at the hearing that the claimed range of softening points is typical or expected are offered as an alternative theory of obviousness in lieu of inherency, those arguments were not adequately developed and presented in the petition. They went on to say that what little you gave us was of no value as well. But as I think this Court knows, that's typical of a trial judge doing belt and suspenders. You didn't have the right to make the argument, and the argument you made was no good as well. And then they went on to – yeah, and then they went on – did go on to talk about the claimed range. Exactly. And they said if you didn't meet your burden, it's not there. So they gave them a sort of chance they shouldn't have had, and they still lost. Well, which is a prudent thing to do when you know you're going to get an appeal. Yes, Your Honor. That's exactly what it is, and that's all it is. It's prudent. Just like it's prudent for me when in the deposition their expert comes up with this new obviousness theory, I ask some questions about it, probably four or five pages, because I'm hearing it for the first time, and I've got to protect myself. But that doesn't mean I've waived what the rules spell out. This is an abuse of discretion. And the next point I want to make, and I've only got a couple, what we have to remember – and this argument typifies that – the petitioners in these cases never want to talk about the claims of the patent. They're always talking about the asphalt. And they always forget to say it's the tack coat and the properties of the cured tack coat on the road that counts. And that's not the asphalt. That's something different. And typically, because this is not our only case, we always hear asphalt, asphalt, asphalt, and very little about tack coat, because those are the properties claimed in the invention and all the claims of the patent. I've got just a couple of other points, and I'll be done. One, the new argument theme is one paying attention to here, because we faced a new argument when inherency blew up. And so they came up with this obviousness argument, which was not well pleaded and was not timely. They then came up with the ranges argument. And on this appeal, we have another new argument not in the record. You can't test the properties of the tack coat the way everybody does it in the industry, even though everybody agreed, our experts told you what the test is, the test is in the patent. So you had another new argument. The bottom line is this decision was absolutely right. They did a bad job in their petition. They've scrambled to try to ignore it. They can't. It's an abuse of discretion. There's no abuse. This appeal should be affirmed and this matter should be affirmed in its entirety. Thank you. I know I've used up my time. No, I will give you two minutes if you need it. All right. On page 26 of the final written decision in the 6-2-4 case, and I think it's probably the same place because they're nearly identical. The board at the bottom of the page explained that it thought that we were foreclosed from presenting the general obviousness argument because the petition had only raised inherency. And then they start a new paragraph. Finally, we find unpersuasive petitioner's argument that has presented a primification of obviousness due to the overlap in the claimed range of softening points with that of the prior art. They didn't say you're precluded from that one. And they decided it on the merits. And so we're appealing from that decision. We've got a situation here where if you follow the Bardisi prior art and you do what Bardisi said to do and you're extremely skilled, you're going to reach the promised land. You're going to make a tack coat that is trackless and has good bonding. You will inevitably do that because of the extraordinary skill in the art that the board found in this case. And you're not even going to measure. In fact, it's unmeasurable. The experts for both sides agreed you can't measure the rheological properties of the cured tack coat. What you're going to do is you're going to test it as Bardisi told you to test it, and you're going to reach the promised land because you've done the same thing that Bardisi said to do. And then you're going to get sued by Blackledge because he's going to say, well, you've got those properties within the scope of our claims. Somehow or other, they'll convince a jury to say that's true, even though it's unmeasurable, according to the experts for both sides. And this patent is going to penalize somebody who follows the prior art. And I think the court should not permit that simply because an expert made a math error. And the other side knew that obviousness was the issue. It was fully developed. The board could have decided it, and they should have decided it. This would be a gross injustice if the court affirms. Thank you. Thank you, Your Honor.